GORDON McCLOUD, J.
*752 ¶ 1 In Washington, hourly workers are entitled to their contractual hourly rate of pay (or the legal minimum wage) for every hour worked. Piece rate workers, on the other hand, are entitled to their contractual piece rate (or the legal minimum wage), but that rate is not necessarily guaranteed for every hour individually worked: a higher production hour might subsidize a lower production hour. See WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY (DLI Admin. Policy) ES.A.3 (July 15, 2014). That means that the characterization of a compensation formula as either hourly or piece rate can have a dramatic effect on the amount of money that a Washington employer must pay its employees.
*753 ¶ 2 The dispute in this case concerns the *705 correct characterization of Xerox's[1] payment plan under Washington law. Xerox has designed a compensation formula for its call center employees based on what Xerox calls a "production minute"-a unit of time (not a unit of tangible items, like bushels, or shirts, or pounds) during which a call center employee services incoming calls. Defs.-Appellants' Opening Br. at 4. If the "production minute" forms the basis for a bona fide piecework system, then one set of minimum wage rules and regulations apply. But if the "production minute" instead forms the basis for an hourly payment system, then another set of hourly and minimum wage protections apply. The characterization of that compensation formula either as hourly or piecework forms the basis for this wage dispute brought by call center employee Tiffany Hill against her employer Xerox, in federal court. Because the answer to this question depends on an underlying issue of Washington state law, the Ninth Circuit has certified the following question to this court:
[W]hether an employer's payment plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under Washington Administrative Code [WAC] Section 296-126-021 ?
Hill v. Xerox Bus. Servs., LLC , 868 F.3d 758, 760 (9th Cir. 2017).
¶ 3 We accept the Ninth Circuit's question as presented, and we answer it no. An employer's payment plan that includes as a metric an employee's "production minutes" does not qualify as a piecework plan under WAC 296-126-021.
*754 I. FACTS AND PROCEDURAL BACKGROUND
A. Xerox's ABC Compensation Plan
¶ 4 Xerox operates call centers nationwide that answer customer service calls on behalf of Xerox's third-party clients. Xerox uses different compensation formulas to pay its employees based in part on how it bills the clients served by each particular call center. The call center involved in this lawsuit is located in Federal Way. Xerox compensates Federal Way call center employees using its "Achievement Based Compensation" (ABC) plan.
¶ 5 The ABC plan provides compensation based on three variables: (1) the employee's unique ABC rate for the pay period, (2) the employee's "production minutes" during that pay period (explained in more detail below, but it basically corresponds with the time the employee spends working on inbound customer calls),[2] and (3) the local minimum wage. When this case arose, the ABC rate ranged from $0.15 to $0.23 per production minute based on each employee's average customer satisfaction rating and average call handling time.[3] Using that rate range, employees could earn a maximum of $9.00 to $13.80 per hour depending on their particular ABC rate.
*706 *755 B. The "Production Minute " Basis of Xerox's Compensation Plan
¶ 6 To earn the maximum hourly rate, however, the employees would have to perform incoming-call-related work every minute they were at the call center. This is because the ABC rate applies only to "production minutes." Xerox defines this critical concept as the time the employee is on the phone resolving an inbound customer call or performing certain postcall work.[4] Defs.-Appellants' Opening Br. at 4. "[P]roduction minutes [are] not generated by waiting for calls or making outbound calls." Id. at 25. Nor are "production minutes" generated by time spent reviewing workplace announcements, caring for workstations, logging on and off Xerox's phone systems, or recording time sheets and work activities, either. Id. at 16. And call center employees are not compensated separately for those non-incoming-call-resolution tasks, unless the employee's average hourly salary for the workweek falls below the applicable minimum wage. In such cases, the employee would be compensated separately for his or her nonproduction minutes by the amount necessary to raise that employee's average hourly salary for the workweek up to the minimum wage.[5]
C. The Practical Effect of Characterizing "Production Minutes" as Hourly Wages or Piecework
¶ 7 During the time frame relevant to this case, the minimum wage for Federal Way employees was between *756 $8.67 and $9.04 per hour. Defs.-Appellants' Opening Br. at 9-10 (citing Clerk's Papers (CP) at 552). But Federal Way employees did not necessarily receive that minimum wage for every hour worked. That is because Xerox applied workweek averaging-a concept applicable to piece rate work, but not to hourly work-to calculate minimum wage compliance. Under Xerox's workweek averaging, an employee's high producing hours are used to offset their low producing hours. Thus, unless the employee's average hourly salary for the workweek fell below the applicable minimum wage, the employee would not receive a minimum wage subsidy, even though the employee may have earned less than the minimum wage during certain hours of the week.
¶ 8 Washington's Minimum Wage Act (MWA), chapter 49.46 RCW, permits workweek averaging to determine minimum wage compliance for commission or piece rate workers.[6] But Washington's MWA does not permit such averaging for hourly workers. Instead, hourly workers must receive their contractual rate of pay or minimum wage, whichever is higher, for each hour worked. WAC 296-126-021 ; see also DLI Admin. Policies ES.C.3 (Jan. 2, 2002), ES.A.3 (July 15, 2014).
D. Proceedings in District Court
¶ 9 The pivotal question here is whether Xerox employees under the ABC plan were piece rate workers. Hill, a former employee at Xerox's Federal Way call center, sued Xerox in federal district court. She claimed that Xerox failed to pay her (and a class of similarly situated employees and former employees) at least minimum wage for all time worked, in violation of the MWA. Hill argued that Xerox's ABC plan violated the MWA in two ways. Primarily, *757 she argued that she was an hourly employee, that Xerox paid her for only some minutes worked (her production minutes) but not others, and that she is entitled to back pay for those unpaid, nonproduction minutes. Appellee's Answering Br. at 19-24. Alternatively, Hill argued that even if Xerox correctly classified her as a piece rate worker, Xerox still owes her back *707 pay for her nonproduction minutes. Id. at 27. She contended that she is entitled to such back pay, even as a piece rate worker, based on Lopez Demetrio v. Sakuma Brothers Farms , 183 Wash.2d 649, 355 P.3d 258 (2015). She argues that Lopez Demetrio requires employers to pay piece rate workers separately for their nonproduction time. Appellee's Answering Br. at 28 (quoting Lopez Demetrio , 183 Wash.2d at 652, 355 P.3d 258 ). She sought class certification and back wages based on both theories. CP at 768-83.
¶ 10 Xerox acknowledges that it must pay its call center employees for all time worked and that such payment must comply with the prevailing minimum wage. Xerox argues that its ABC plan fully compensated Hill and the class "for all time they worked." Defs.-Appellants' Opening Br. at 12. Xerox explains that the fact that it measured compensation for all time worked based on the minutes spent resolving inbound customer calls does not mean that it failed to pay its call center workers for their other work-specifically, for their other, non-inbound-call work. Xerox relied on contractual provisions explaining that compensation for all time spent working would be measured by just a portion of the time spent working-the employee's production minutes. Id. at 15-17.
¶ 11 Xerox moved for partial summary judgment in federal district court on multiple issues related to minimum wage and overtime compliance under the MWA. The district court ruled that the resolution of all of those issues depended on "whether the Federal Way workers are hourly employees (as Plaintiff [Hill] contends) or pieceworkers (as Defendants contend)." CP at 134. The district court resolved that foundational issue in Hill's favor and denied Xerox's *758 motion. That court explained that "the Federal Way employees [were] hourly workers" and therefore were entitled to a per hour minimum wage. Id. The district court recognized that classifying Xerox employees as hourly employees probably oversimplified the mechanics of the ABC plan. Id. at 135. But it was concerned that "were this Court to accept Defendants' description, every employer could pay hourly workers a 'per-minute' rate and thereby avoid the Washington law governing workers paid on a per-hour rate." Id. The district court was most concerned with Xerox's use of actual clock time rather than estimated times, explaining that "[a] system equating certain tasks to pre-established units of time [regardless of how much time the tasks actually took] is very different than one that measures the precise amount of time a task takes. The former may resemble a piece[ ]rate system, but the latter more closely resembles an hourly system." Id. at 136 (emphasis added). It therefore denied Xerox's motion for partial summary judgment.
¶ 12 The district court, however, recognized the novelty of Xerox's compensation scheme and the decisive effect its decision had on the remaining portions of the parties' wage dispute. It therefore certified its decision to the Ninth Circuit Court of Appeals for immediate, interlocutory review. Id. at 129.
E. Proceedings in the Ninth Circuit
¶ 13 The Ninth Circuit accepted review, determined that resolution of the case involved consideration of an open question of Washington state law, and certified the following state law question to this court:
[W]hether an employer's payment plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under [WAC §] 296-126-021?
Hill , 868 F.3d at 760. We accepted review. RAP 16.16 ; ch. 2.60 RCW.
*759 II. ANALYSIS
A. We Decline the Parties' Invitation To Revise the Certified Question
¶ 14 As a threshold matter, both Xerox and Hill ask us to reformulate the certified question. Each complains that the question does not fully resolve their dispute.
¶ 15 Xerox describes the parties' underlying dispute as really one of hourly versus nonhourly pay, regardless of what type of nonhourly compensation (commission, salary, nondiscretionary bonus, piecework, or some other alternative pay structure) the ABC
*708 plan implicates.[7] Defs.-Appellants' Opening Br. at 45. Thus, the certified question, which asks only whether the ABC plan constitutes a piecework plan, does not resolve Xerox's broader argument that the ABC plan qualifies as some other nonhourly, nonpiecework plan, such as commission pay. Xerox asks that we reform the certified question and instead answer " 'whether an employer's payment plan that pays based on production, but that includes as a unit of work an employee's "production minutes," qualifies as an hourly compensation plan?' " Id. at 7.
¶ 16 Hill also seeks revision of the certified question, but she asks that we reframe the issue in a different way. Appellee's Answering Br. at 14. She describes the issue in this case, in part, as whether Xerox failed to pay its employees for their nonproduction minutes. See id. at 1-2.
¶ 17 The Ninth Circuit acknowledges that neither party is satisfied with its certified question and leaves the *760 decision whether to reformulate that question to this court.[8] We decline to do so. The parties have a broader dispute that they have more fully briefed and argued in the Ninth Circuit. Whether "production minutes" constitute piece rate work is just part of that larger case. But it is the foundation on which the other arguments must stand. We therefore accept the Ninth Circuit's request for guidance on only the narrow question presented: whether Xerox's ABC plan, "which includes as a metric an employee's 'production minutes,' qualifies as a piecework plan under [WAC §] 296-126-021?" Hill , 868 F.3d at 760.
¶ 18 We answer that narrow, certified question in the negative and leave resolution of the parties' broader wage dispute for the federal district court, in which the dispute is filed.
B. Xerox's ABC Plan Does Not Qualify as a Piecework Plan under WAC 296-126-021
¶ 19 Washington has a " 'long and proud history of being a pioneer in the protection of employee rights.' " Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett , 146 Wash.2d 29, 35, 42 P.3d 1265 (2002) (quoting Drinkwitz v. Alliant Techsystems, Inc. , 140 Wash.2d 291, 300, 996 P.2d 582 (2000) ). In 1913, Washington was one of the first states to enact a statewide minimum wage for women and minors. LAWS OF 1913, ch. 174, § 2. In 1959, those minimum wage protections were expanded to include men. LAWS OF 1959, ch. 294, §§ 1-2. That expanded version became known as the Washington MWA.[9] LAWS OF 1961, Ex. Sess. ch. 18, § 6.
¶ 20 The legislature enacted these minimum wage laws to protect the health, safety, and general welfare of its citizenry by ensuring that minimal employment standards *761 were met. RCW 49.46.005(1) ; LAWS OF 1913, ch. 174, § 1. Under those laws, Washington employers and employees generally remain free to negotiate the terms of their employment relationship. But "an employer must pay an employee at least the minimum wage for work" performed. Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co. , 139 Wash.2d 824, 838, 991 P.2d 1126 (2000) ( SPEEA ) (emphasis added).
¶ 21 Thus, in SPEEA , this court ruled that an employment contract requiring an employee to attend preemployment orientation sessions without pay is unenforceable: it violates the rule that the employer must pay the employee at least the minimum wage for work performed. Id. Similarly, in Stevens v. Brink's Home Security, Inc. , this court ruled *709 that a contract denying employees compensation for work time spent "on duty," driving company vehicles between their homes and company jobsites, was unenforceable. 162 Wash.2d 42, 49, 169 P.3d 473 (2007). This court explained, once again, that the MWA gives an employee the right to compensation for all time worked.
¶ 22 To be sure, the regulations implementing the MWA make an exception to this right to earn the minimum wage for every hour worked: they permit workweek averaging for employees who are "paid on a commission or piecework basis, wholly or partially." WAC 296-126-021. The certified question before us is whether Xerox's ABC plan qualifies as piece rate compensation subject to workweek averaging pursuant to that regulation. Id. We hold that it does not.
¶ 23 WAC 296-126-021 authorizes employers to pay employees on a piecework basis and establishes a formula for calculating minimum wage compliance for such pay. (That formula includes workweek averaging.) But the regulation does not define what compensation schemes fit within the meaning of piecework pay. The Department of Labor and Industries (the agency tasked by the legislature with enforcing the MWA and its implementing regulations) has not defined the scope of piecework compensation either. That agency describes "[p]iece rate employees" only as "usually *762 paid a fixed amount per unit of work." DLI Admin. Policy ES.A.8.2 (July 15, 2014).[10] It does not say whether time-specifically, minutes-constitutes a "unit of work."
¶ 24 Xerox argues that its ABC plan fits within the agency description of piece rate because the plan compensates call center workers a "fixed amount" (their per minute ABC rate) on a "per unit of work" measurement-and it describes the unit as the "production minute." Hill disagrees with that classification. She argues that if employers were allowed to use an employee's clock time as a "unit of work," then employers could circumvent the MWA's bar against workweek averaging simply by classifying their employees' otherwise hourly salaries as piece rate units.
¶ 25 We agree with Hill. The MWA does not permit employers to use clock time as a "unit of work" for piece rate pay. A contrary rule would allow WAC 296-126-021's limited exception for workweek averaging to swallow up the general rule barring workweek averaging for hourly employees. Under Xerox's interpretation, employers would be able to pay their workers less than minimum wage for each hour worked-something they are not allowed to do under the hourly system-simply by classifying portions of the employees' work time as piece rate units.
¶ 26 This proposed interpretation of WAC 296-126-021 is inconsistent with our duty to liberally construe the provisions of the MWA, including its corresponding regulations, in favor of workers' protections and their right to be paid a minimum wage for each hour worked. Becerra Becerra v. Expert Janitorial, LLC , 181 Wash.2d 186, 195, 332 P.3d 415 (2014) (citing Int'l Ass'n of Fire Fighters , 146 Wash.2d at 45, 42 P.3d 1265 ); RCW 49.46.005. Indeed, our precedent requires this court to make sure that the MWA " ' "be liberally construed [in favor of the employee] and that its exceptions be narrowly confined." ' "
*763 Int'l Ass'n of Fire Fighters , 146 Wash.2d at 34, 42 P.3d 1265 (alteration in original) (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. , 130 Wash.2d 401, 407, 924 P.2d 13 (1996) (interpreting a collective bargaining statute) (quoting Nucleonics All., Local Union No. 1-369 v. Wash. Pub. Power Supply Sys. , 101 Wash.2d 24, 29, 677 P.2d 108 (1984) ) ).
¶ 27 We therefore answer no to the certified question. We answer no more than that. We understand that compensation plans in other industries are sometimes based on estimated times, as opposed to actual clock times.[11] Our decision today does not address *710 the characterization of those plans. We also understand that the parties dispute whether the ABC plan qualifies as some other measure of nonhourly pay that could qualify for workweek averaging. That question is not before us either.
¶ 28 Our holding is limited to answering the certified question.
CONCLUSION
¶ 29 We answer the certified question from the Ninth Circuit in the negative. We hold that actual clock hours cannot be used as a piece rate measure under WAC 296-126-021.
WE CONCUR:
Fairhurst, C.J.
Madsen, J.
Wiggins, J.
González, J.
Yu, J.

We refer to defendants Xerox Business Services LLC, Livebridge Inc., Affiliated Services Inc., and Affiliated Computer Services LLC collectively as "Xerox" throughout this opinion.

In the past, Xerox paid its employees based on the number of calls they resolved but switched to a per minute metric after receiving complaints from employees that the per call metric penalized them for taking difficult calls that took longer to resolve. Defs.-Appellants' Opening Br. at 3-4.

Under the ABC plan, an employee's ABC rate fluctuated each pay period based on two metrics: average customer service rating and average call handling time:
Average Customer AHT [Avg. Call Handling AHT 485+ [seconds] Rating Time] 0-485 [seconds] [Tier A:] 100% [$0.23 per min.] [$0.19 per min.] [Tier B:] 95%-99.9% [$0.22 per min.] [$0.18 per min.] [Tier C:] 90%-94.9% [$0.18 per min.] [$0.17 per min.] [Tier D:] 85%-89.9% [$0.16 per min.] [$0.15 per min.] [Tier E:] 0-84.9% [$0.15 per min.] [$0.15 per min.]
Appellee's Answering Br. at 22.

The parties dispute whether the ABC rate applied to postcall work. Appellee's Answering Br. at 6 n.4. Resolution of that dispute is not necessary to answer the certified question presented. The critical and undisputed fact is that the ABC plan measured production minutes based on actual clock time.

Xerox paid a separate, hourly rate for specific, predefined activities, such as training, staff meetings, work shortages, system down time, and breaks. Compensation for time spent doing those activities is not in dispute.

Pursuant to the MWA, agricultural workers who are paid by the piece must also receive an hourly wage of at least minimum wage for work performed outside the scope of "piece-rate picking." Carranza v. Dovex Fruit Co. , 190 Wash.2d 612, 617, 416 P.3d 1205 (2018).

The district court suggested, in a different case, that Xerox's ABC plan might qualify as a commission-based schedule. Douglas v. Xerox Bus. Servs., LLC , No. C12-1798-JCC, 2015 WL 10791972, at *4 n.3 (W.D. Wash. Dec. 1, 2015) (court order). But the Ninth Circuit rejected Xerox's claim in this case that the ABC plan could be classified as anything other than piece rate or hourly pay. Hill , 868 F.3d at 760 n.1 (concluding that "Xerox cannot seriously contend that its compensation plan was anything other than one of these two systems": piece rate or hourly).

Hill , 868 F.3d at 763 (citing Broad v. Mannesmann Anlagenbau AG , 196 F.3d 1075, 1076 (9th Cir. 1999) (acknowledging that this court may in its discretion reformulate certified questions when necessary to answer them) ).

The act was briefly known as the Washington Minimum Wage and Hour Act, until its name change in 1961. Laws of 1959, ch. 294, § 14.

Consistent with that general description, we recently described "piece rate" as "tied to the employee's output (for example, per pound of fruit harvested) and is earned only when the employee is actively producing." Lopez Demetrio , 183 Wash.2d at 652, 355 P.3d 258.

For example, automotive repair shops sometimes pay their mechanics predefined hours (known as "flag hours") for each particular repair job, regardless of how long it actually takes the mechanic to complete the job. Sandoval v. M1 Auto Collisions Ctrs. , No. 13-CV-03230-EDL, 2016 WL 6561580, at *2 (N.D. Cal. Sept. 23, 2016) (court order) (mechanics); Gonzalez v. Downtown LA Motors, LP , 215 Cal. App. 4th 36, 41, 155 Cal.Rptr.3d 18 (2013) (mechanics); see also Green v. Lawrence Serv. Co. , No. LA CV 12-06155 JAK (VBKx), 2013 WL 3907506 (C.D. Cal. July 23, 2013) (court order) (wages based on estimated time it takes to set up retail displays for mobile vendors); Gen. Teamsters Local No. 174 ex rel. Gasca v. Safeway, Inc. , noted at 156 Wash. App. 1003, 2010 WL 1981821, at *2 (driver wages based on estimated trip time).