STEPHENS, J. (dissenting)
*764 ¶ 30 Starting from the flawed premise that "production minutes" are "actual clock hours," the majority invalidates Xerox's achievement based compensation (ABC) plan as essentially a cleverly disguised hourly compensation scheme. Majority at 709-10. This is contrary to the way the plan actually functions. While using increments of time as part of a performance metric, the ABC plan is a pure piece-rate plan that compensates employees based on units of work, not by the minute or hour. I would answer the certified question, yes, an employer's compensation plan, which includes as a metric an employee's "production minutes," may qualify as a piecework plan under WAC 296-126-021. I respectfully dissent.
ANALYSIS
¶ 31 Washington's Minimum Wage Act (MWA), ch. 49.46 RCW, recognizes that employers may compensate their employees in a variety of ways. It expresses no preference for any particular method of compensation. Relevant here, employers can pay their employees a piece rate for units of work, irrespective of time. "Piece rate employees are usually paid a fixed amount per unit of work"-for example, $0.75 per apple picked, $0.10 per widget produced, or $5.00 per mile driven. WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2 (revised July 15, 2014), http://www.lni.wa.gov/WorkplaceRights/files/policies/esa82.pdf [https://perma.cc/J4RE-S78Y]. Alternatively, employers can pay their employees an hourly rate for each hour worked, irrespective of productivity. The distinction between these two methods of compensation forms the backdrop to the certified question because how employees are paid determines the applicable minimum wage rules and regulations. Hill v. Xerox Bus. Servs., LLC , 868 F.3d 758, 761 (9th Cir. 2017).
¶ 32 Minimum wage compliance under Washington law is determined differently for piece-rate employees than for *765 hourly employees. When an employee is paid on a piecework basis, as opposed to an hourly basis, employers may use workweek averaging to determine whether the employee's overall compensation complies with the MWA. See WAC 296-126-021 ; WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.3 (revised July 15, 2014), http://www.lni.wa.gov/WorkplaceRights/files/policies/esa3.pdf [https://perma.cc/7XWG-6FE8]. "In other words, as long as the total wages paid for a given week, divided by the total hours worked that week, averages to at least the applicable minimum wage," the piece-rate employee's compensation complies with Washington law. Hill , 868 F.3d at 759. In contrast, when an employee is paid on an hourly basis, the hourly employee " 'retain[s] *711 a per-hour right to minimum wage under Washington law,' " and workweek averaging is not permitted. Id. (alteration in original) (quoting Alvarez v. IBP, Inc. , 339 F.3d 894, 912 (9th Cir. 2003), aff'd , 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) ).
¶ 33 Given the differences between piecework compensation and hourly compensation, the correct characterization of Xerox's ABC plan is critical to determining whether the plan complies with Washington law. As the majority explains, the distinction is particularly important in this case because "[i]f the 'production minute' forms the basis for a bona fide piecework system, then one set of minimum wage rules and regulations apply. But if the 'production minute' instead forms the basis for an hourly payment system, then another set of hourly and minimum wage protections apply." Majority at 705.[1]
*766 ¶ 34 I would hold that the time-based units used in Xerox's ABC plan-"production minutes"-qualify as piecework units because they are functionally a metric of production , not a measurement of time, as they are "tied to the employee's output." Lopez Demetrio v. Sakuma Bros. Farms , 183 Wash.2d 649, 652, 355 P.3d 258 (2015).
A "Production Minute" May Qualify as a "Unit of Work" under Washington Law
¶ 35 The certified question requires us to determine what exactly is "a piecework plan under [WAC] 296-126-021." Hill , 868 F.3d at 763. Neither WAC 296-126-021 nor the statutory text of the MWA explicitly defines the term "piecework." WAC 296-126-021 establishes that employees "paid on a commission or piecework basis, wholly or partially," are entitled to a minimum wage based on a workweek period. This simply means that a piecework employee's compensation complies with Washington law so long as the total wages paid in a workweek divided by the total hours worked that week averages to at least the applicable minimum wage. The MWA and its corresponding regulations also authorize employers to measure minimum wage compliance on a piecework basis, without expressly defining the term "piecework." RCW 49.46.020 ; WAC 296-126-020(1) ("Every employer shall pay to each of his or her employees ... a rate of pay per hour which is equal to the hourly rate required by RCW 49.46.020..., whether computed on an hourly, commission, piecework , or other basis." (emphasis added) ).
¶ 36 In the absence of definitional clarity from the legislature, we look to the Department of Labor and Industries (DLI) and our case law for further guidance. According to *767 DLI, "[p]iece rate employees" are "usually paid a fixed amount per unit of work." WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2. "For example, in a manufacturing plant, workers are paid 10 cents per widget they make on the production line."[2] In Lopez Demetrio , we described *712 piece-rate pay in a similar way: "A piece rate is tied to the employee's output (for example, per pound of fruit harvested) and is earned only when the employee is actively producing." 183 Wash.2d at 652, 355 P.3d 258. A working definition of the term "piecework" emerges from this guidance. Under a piecework plan, employees are paid a fixed rate for each "unit of work" produced (not a set hourly rate for each hour worked). WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2. And, the "unit of work," or "piece," must be "tied to the employee's output" and production. Lopez Demetrio , 183 Wash.2d at 652, 355 P.3d 258. In other words, a "unit of work" must be some metric of production, not merely a measurement of time.
¶ 37 Applying this definition to the certified question, the primary issue in this case is whether "production minutes" under Xerox's ABC plan qualify as "units of work" when they are "tied to the employee's output." See Hill , 868 F.3d at 762 ("The central question here, however, is whether 'production minutes' can be classified as a unit of work.").
*768 Xerox's ABC Plan Is an Incentive-Based Model That Uses "Production Minutes" as Part of the Metric for Measuring Employee Performance
¶ 38 The ABC plan primarily compensates employees for their productivity. It uses a three-part metric for measuring productivity, based on "rep resolve" (customer satisfaction as reported in surveys), "average handle time" (AHT) for calls, and "production minutes."[3] Clerk's Papers (CP) at 491. "Production minutes" are generated while an employee is on an incoming call, on hold during an incoming call, or completing after-call work related to the incoming call. Hill , 868 F.3d at 760. The ABC plan structures employee compensation around "production minutes" because that is how Xerox sells its product to its client, Verizon-by the "production minute." As specified in the Verizon contract, Verizon pays Xerox based on the number of "production minutes" the Federal Way call center generates. CP at 488.[4]
¶ 39 In order to calculate an employee's pay, the ABC plan first determines a compensation rate based on "rep resolve" and "AHT." Id. at 491. It then multiplies the employee's rate of pay by the total number of "production minutes" the employee logs each week to determine the employee's weekly ABC pay. While focusing on employee productivity, the ABC plan guarantees that employees will be paid at least the minimum wage for all hours worked, regardless of production. To ensure that every employee receives at least the legal minimum wage for all time worked, Xerox calculates each employee's hourly rate by *769 dividing the employee's weekly production-based pay by the total number of hours worked that week. If that hourly rate falls below the applicable minimum wage rate, Xerox pays the difference to the employee as "subsidy pay" in a lump-sum amount, which is added to the employee's weekly paycheck. Hill , 868 F.3d at 761. In this regard, it is not possible for an employee to be paid less than minimum wage for all recorded hours worked, even if the employee never answers a single call. If an employee reports to work on Monday and leaves work on Friday without generating any "production minutes" that week, the employee will still be paid at the applicable minimum wage rate for every recorded hour worked.
¶ 40 To properly understand how the ABC plan functions, it is important to appreciate that it was created as "an incentive-based model rewarding agents who were efficient at dealing with customer issues." Id. at 760.[5]
*713 Prior to 2009, Xerox paid employees a fixed rate for every incoming call the employee handled. Defs.-Appellants' Opening Br. at 3; CP at 543-44. Unsurprisingly, Xerox used each call as the production unit in order to incentivize employees to handle more calls. At the end of each workweek, Xerox tracked the number of incoming calls the employee received and multiplied that number by certain production rates to determine the employee's weekly ABC pay. CP at 543-44. If an employee did not handle enough calls for the weekly ABC pay to reach the legal minimum wage rate, Xerox paid the difference so the employee was always paid at least the minimum wage on a weekly basis. As under the current plan, this call-based ABC plan focused on employee productivity and paid employees per unit of production.
*770 ¶ 41 The ABC plan was eventually modified to use "production minutes" rather than calls as the measure of productivity. Xerox made this change in part to address employee concerns about the unfairness of paying the same amount for all incoming calls, regardless of duration. Id. Under the call-based ABC plan, employees earned the same amount for any call they received, whether the call lasted for 30 minutes or 30 seconds. Defs.-Appellants' Opening Br. at 23. The ABC plan was also modified because Xerox's contract with Verizon changed to provide that Xerox would be compensated for the number of "production minutes" generated by the Federal Way call center. As noted, Verizon currently purchases minutes of specific call-related activities-"production minutes"-from Xerox. CP at 543-44. Although the ABC plan switched to a different unit of measurement-"production minutes" rather than calls-everything else about the plan remained the same, and the focus remained on incentivizing productivity. Thus, "just like a fruit-seller trying to maximize the amount of fruit he has to sell by incentivizing his employees to pick more through a piecework system, Xerox sought to maximize the amount of minutes it could charge ... by incentivizing its agents to generate more 'production minutes.' " Hill , 868 F.3d at 762.
¶ 42 Although described in terms of time segments, "production minutes" function as units of work. Like the apple farmer who produces and sells apples, Xerox produces and sells units of customer service-"production minutes"-which its employees generate while assisting Verizon customers. It may seem unusual for an employer to use time-based units as a basis for piece-rate pay, but the MWA does not prohibit it. Nothing in Washington law requires that a unit of work in a piecework plan be a tangible item, like a shirt or a piece of fruit. To the contrary, employers often compensate pieceworkers for intangible work activities or based on qualitative metrics, such as miles driven, pounds of fruit harvested, or calls taken. No one refutes *771 that the prior version of the ABC plan, which used individual calls rather than "production minutes," qualified as a piecework plan under WAC 296-126-021. Rather than focusing on the label "minutes," we should consider that Xerox's ABC plan simply "responds to a modem problem-one in which the 'goods' are not always tangible." Id. So long as the "piece" is "tied to the employee's output," I see no reason why a unit of work may not simultaneously be a measurement of time and a measurement of production. While the ABC plan may seem novel in its choice of production unit, there is nothing unusual about how the production unit actually functions-each "production minute" is a compensable unit of work that Xerox sells.
¶ 43 The majority cannot get past the fact that minutes are segments of time. Indeed, it characterizes "production minutes" as comprising "actual clock hours." Majority at 710. Thus, it concludes that "[t]he MWA does not permit employers to use clock time as a 'unit of work' for piece rate pay." Id. at 709. The majority fears that "[a] contrary rule would allow the WAC 296-126-021's limited exception for workweek averaging to swallow up the general rule barring workweek averaging for hourly employees." Id. In the majority's *714 view, "if employers were allowed to use an employee's clock time as a 'unit of work,' then employers could circumvent the MWA's bar against workweek averaging [for hourly employees] simply by classifying their employees' otherwise hourly salaries as piece rate units." Id. I believe the majority's characterization of the ABC plan disregards how the plan actually functions. As the certification order recognizes, "production minutes" are not clock time; "even though two employees may work the same number of total hours, one will earn more money if, during those hours, he spends more time than the other agent on incoming calls-just like a person who picks more strawberries." Hill , 868 F.3d at 762 n.6.
¶ 44 Because Xerox employees are paid for their production units rather than for their time, the majority's reliance *772 on Seattle Professional Engineering Employees Ass'n v. Boeing Co. , 139 Wash.2d 824, 991 P.2d 1126 (2000) ( SPEEA ) and Stevens v. Brink's Home Security, Inc. , 162 Wash.2d 42, 169 P.3d 473 (2007) is misplaced. Majority at 708-09. SPEEA and Stevens involve hourly workers who were contractually required to perform certain work activities without any pay. The employees in SPEEA were required to attend unpaid orientation sessions, while those in Stevens were not compensated for certain travel time on the job. Here, there are no unpaid workers or unpaid time, just a "somewhat complex" compensation method. Hill , 868 F.3d at 760.
¶ 45 I disagree with the majority's assumption that employers will use time-based production units as a strategy for circumventing minimum wage laws. Under a piecework plan, employers must pay their employees a set amount for each "unit of work" produced. And, the "unit of work" must be "tied to the employee's output." Lopez Demetrio , 183 Wash.2d at 652, 355 P.3d 258. Employers may not arbitrarily pay hourly workers a "per minute" rate in an effort to transform hourly pay into piece-rate pay. To qualify as a piecework plan, compensation measured by work minutes must be tied directly to some productivity metric, such as the "production minutes" at issue in this case. Here, Xerox markets and sells a specific product to Verizon-a "production minute." Verizon in turn pays Xerox for the number of "production minutes" Xerox generates. Federal Way employees produce each "production minute" that is eventually sold to Verizon. The entire business model involves the same unit of production: Xerox sells "production minutes," the Federal Way employees produce "production minutes," and Verizon purchases "production minutes." Recognizing the ABC plan as a piecework plan will not open the door to abusive practices. Employers cannot "simply ... classify[ ] portions of the employees' work time as piece rate units," as the majority assumes. Majority at 709. There must be, as here, an actual unit of production.
*773 CONCLUSION
¶ 46 Xerox's ABC plan compensates employees based on their production, not their clock time at work. Under WAC 296-126-021, this compensation plan, which includes as a metric an employee's "production minutes," may qualify as a piecework plan when the "production minutes" function as a metric of production tied to the employee's output. I would answer yes to the certified question.
Owens, J.
Johnson, J.

While the majority initially recognizes that "Washington's [MWA] permits workweek averaging to determine minimum wage compliance for commission or piece rate workers," majority at 709, it later casts workweek averaging under WAC 296-126-021 as a "limited exception" to "the general rule barring workweek averaging for hourly employees." Id. at 709. This description is confusing at best. WAC 296-126-021 is not a "limited exception" to an employee's right to earn the minimum wage for every hour worked. See id. at 708. All employees have that right. Workweek averaging is simply a permitted method for ensuring that commission or piece-rate employees receive at least the minimum wage for all hours worked. The majority's "limited exception" versus "general rule" language seems to suggest that hourly pay is Washington's preferred method of compensation, but the MWA expresses no such preference. As noted, Washington law affords employers the flexibility to choose among various compensation models, so long as employees receive at least the applicable minimum wage and are paid for all hours worked.

This definition appears on the DLI website, as cited by the Ninth Circuit, and states in its entirety:
Piece rate payment is usually a price paid per unit of work. For example, in a manufacturing plant, workers are paid 10 cents per widget they make on the production line. The worker is entitled to minimum wage, however. So if the pay per piece does not equal minimum wage for the time it took to create those pieces, the business must make up the difference so the worker gets at least minimum wage for the time worked.
Wash. St. Dep't of Lab. & Industry , Commissions, Piece Rate & Bonuses, https://www.lni.wa.gov/WorkplaceRights/Wages/PayReq/CommBonus/default.asp [https://perma.cc/6CQB-BN8U].

Xerox pays employees on a separate, hourly basis for specific, non-call-related activities, such as training, staff meetings, work shortages, system down time, and breaks. Employees may also receive separate bonuses for meeting predefined achievement goals, or based on special client-sponsored incentive programs. Compensation outside of the ABC plan is not in dispute.

Notably, this contract limits "production minutes" to 507 average seconds per call received. CP at 488.

The majority prefers not to recognize the ABC plan as an incentive-based model but as one under which "an employee's high producing hours are used to offset their low producing hours." Majority at 706. The suggestion is that because Xerox uses workweek averaging, "Federal Way employees did not necessarily receive that minimum wage for every hour worked." Id. The majority's characterization unnecessarily casts a cloud over the use of workweek averaging to calculate piece-rate pay-a practice that is not in question in this case and is specifically authorized under WAC 296-126-021. See Hill , 868 F.3d at 762-63.