YU, J. (dissenting)
*633 ¶36 I agree with the majority that obesity does not have to be caused by a separate physiological disorder or condition to qualify as an impairment pursuant to the RCW 49.60.040(7)(c)(i). Majority at 609-10. I also agree that obesity, as a physiological disorder or condition, is distinct from weight, which is a physical trait. See id. at 616-17. And the majority is correct that "[o]besity is not merely the status of being overweight," id. at 612, and that there is growing consensus in the medical community that obesity is itself a disease, id. at 613. But because the diagnostic line between "overweight" and "obese" is a function of an individual's weight in relationship to their height, I do not agree that "obesity always qualifies as an impairment under the plain language of the RCW 49.60.040(7)(c)(i)." Id. at 608.
¶37 I would reframe the certified question slightly to ask under what circumstances, if any, obesity is a disability for purposes of the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW. According to the plain language of the statute, obesity is a disability if (i) the plaintiff's obesity is medically cognizable, medically diagnosable, exists as a record or history, or is perceived to exist whether or not it actually does, RCW 49.60.040(7)(a), and (ii) the plaintiff's obesity impairs one or more body systems listed in RCW 49.60.040(7)(c)(i). This approach avoids a per se rule that could extend WLAD protections to individuals who are not disabled and avoids the stigma of labeling all individuals over a certain height to weight ratio as impaired.
A. Defining obesity
¶38 The majority states that obesity involves "an abnormal accumulation of fat cells." Id. at 613. But, as the majority explains, obesity as a disease is more than " 'a quantitative excess of body fat.' " Id. at 613 (quoting Jeffrey I. Mechanick et al., American Association of Clinical Endocrinologists' Position Statement on Obesity and Obesity Medicine, 18 ENDOCRINE PRAC. 642, 644 (2012)). Instead, *634 " 'obesity is an altered physiological and metabolic state, with environmental, genetic, and hormonal determinants, which results in increased morbidity and mortality.' " Id. (emphasis omitted) (quoting Mechanick et ah, supra, at 644). This begs the question: At what point does an excess of body fat make an individual "obese"?[1] *618 ¶39 "The National Institutes of Health and the World Health Organization have both adopted BMI [body mass index] as a criterion for defining obesity." George A. Bray et al., The Science of Obesity Management: An Endocrine Society Scientific Statement, 39 ENDOCRINE REVS . 79, 81 (2018); see also THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 19 (Robert S. Porter et al. eds., 20th ed. 2018) ("Obesity is excess body weight, defined as a body mass index [greater than or equal to 30]."). BMI is considered a useful population-level measure of obesity but has been questioned by some experts as inadequate for diagnosis of individuals. See, e.g., NAT'L HEART, LUNG & BLOOD INST., U.S. DEP'T OF HEALTH & HUMAN SERVS., MANAGING OVERWEIGHT AND OBESITY IN ADULTS: SYSTEMATIC EVIDENCE REVIEW FROM THE OBESITY EXPERT PANEL 5 (2013) ("BMI correlates fairly well with total body fat on a population basis; however, it has limitations in predicting excess body fat associated with health risk on an individual basis."); Louise J. Aronne et al., Obesity as a Disease State: A New Paradigm for Diagnosis and Treatment, 9 CLINICAL CORNERSTONE 9, 13 (2009) ("[I]ndividuals with similar BMIs can have vastly different body compositions."); Mechanick et al., supra, at 645 ("BMI... neglects the extent to which any increase in adiposity adversely alters physiology, metabolism, and health."). *635 ¶40 BMI does not distinguish weight associated with muscle from weight associated with fat. Bray et al., supra, at 82. For example, a professional football player may have a high BMI because of his weight in relation to his height, but that weight is associated with muscle rather than fat.[2] BMI has also been criticized for its inability to distinguish body fat distribution, which is relevant to determining metabolic risk. Id.
¶41 To be sure, medical practitioners are cautioned to not rely solely on BMI and to look to other factors when diagnosing obesity. But those factors do not have the same type of hard and fast classifications that BMI does and often include looking at the effect on other systems. See THE MERCK MANUAL , supra, at 20-21.
B. Impairment should be evaluated individually
¶42 Whether obesity is defined as BMI over 30, an abnormal excess in fat cells, or some other measure, the WLAD requires a showing that one or more specified body systems is actually impaired. RCW 49.60.040(7)(c)(i). In many cases, this requirement will be met by the diagnosis or perception itself.
¶43 According to amici, BMI is "only the first step in diagnosing obesity" and "misclassification is somewhat common." Amici Curiae Br. of Obesity Action Coal. & Disability Rights Wash, in Supp. of Appellants at 5. In addition to body composition, "clinical effects of obesity on health, feeling, and functioning are considered" as part of a complete diagnosis. Id. at 6. Thus, a medical diagnosis of obesity may already include a showing that a particular body system is affected. If not, the plaintiff would be required to provide additional evidence to meet the requirements of the WLAD. See generally Henry C. Lukaski, *636 Commentary: Body Mass Index persists as a Sensible Beginning to Comprehensive Risk Assessment, 43 INT'L J. EPIDEMIOLOGY 669, 670 (2014) (discussing the "metabolically healthy obese").
¶44 In this case, Casey Taylor was diagnosed as extremely obese by BNSF's physician based on his BMI. 2 Excerpts of Record (ER) at 147. His obesity was perceived to affect "other health conditions," including sleep apnea and diabetes. Id. at 164. Sleep apnea affects the respiratory system, and diabetes affects the endocrine system. Thus, Taylor's obesity was (a) medically diagnosed or perceived and (b) perceived to affect at least one or more body systems.
*619 C. Implications beyond employment
¶45 We typically provide narrow answers to certified questions from federal courts. See, e.g., Hill v. Xerox Bus. Servs., LLC, 191 Wash.2d 751, 760, 426 P.3d 703 (2018). The court's broad holding that obesity always qualifies as an impairment under the plain language of the WLAD has potentially far-reaching consequences beyond those considered in this case.
¶46 As an example, RCW 49.60.215 makes it an unfair practice "to commit an act which directly or indirectly results in any distinction, restriction, or discrimination ... in any place of public resort, accommodation, assemblage, or amusement" because of the presence of a disability. A place of public accommodation must reasonably accommodate "the known physical, sensory, or mental limitations of a person with a disability." WAC 162-26-080. But unlike reasonable accommodations in the employment context, no showing of actual impairment or substantially limiting effect is required. See majority at 612 n.4; see also RCW 49.60.040(7)(d). In guidance to operators of places of public accommodation, the Human Rights Commission explains that a "disability may be obvious, such as a person who uses a wheelchair" or that a person "may need to inform you of *637 the disability." WASH. STATE HUMAN RIGHTS COMM'N, GUIDE TO DISABILITY AND WASHINGTON STATE NONDISCRIMINATION LAWS: FREQUENTLY ASKED QUESTIONS AND ANSWERS 13 (2012). An operator making a good faith attempt to comply with the law risks offending some patrons by assuming they are disabled because of their weight or risks opening themselves up to liability to patrons who claim their disability should have been "obvious" from their appearance. 11 am concerned about the uncertainty and the far-reaching impact of the court's decision.
D. Conclusion
¶47 Obesity is a disability for purposes of the WLAD when (a) the plaintiff's obesity is medically cognizable, medically diagnosable, exists as a record or history, or is perceived to exist whether or not it actually does and (b) the plaintiff's obesity impairs one or more body systems listed in RCW 49.60.040(7)(c)(i). The majority's answer to the certified questions, that obesity is always an impairment for purposes of the WLAD, ignores the need for an individualized inquiry. Therefore, I respectfully dissent.
Gordon McCloud, J.

The parties and amici have cited to dozens of scientific journals and scholarly articles to aid our understanding of obesity and its effects on the body. One thing is clear from the literature-there is disagreement in the medical community on how to measure obesity and what effects it has on the various systems of the body. Courts can evaluate impairment from obesity on an individual basis. But the legislature is the proper body to evaluate all of the available information and make a policy decision on whether obesity is a per se impairment and the medical factors that should be considered.

See Angus Chen, If BMI Is the Test of Health, Many Pro Athletes Would Flunk, NPR (Feb. 4, 2016, 12:36 PM), https://www.npr.org/sections/health-shots/2016/02/04/465569465/if-bmi-is-the-testrof-health-many-pro-athletes-would-flunk [https://perma.cc/5F5X-9W2U].