**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIFFANY HILL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>XEROX BUSINESS SERVICES, LLC; LIVEBRIDGE INC., an Oregon Corporation; AFFILIATED COMPUTER SERVICES INC., a Delaware Corporation; AFFILIATED COMPUTER SERVICES LLC, a Delaware Limited Liability Company,<br><br>*Defendants-Appellants.* | No. 14-36029<br><br>D.C. No. 2:12-cv-00717-JCC<br><br>CERTIFICATION ORDER TO THE WASHINGTON SUPREME COURT |

Filed August 7, 2017

Before: Richard A. Paez and Consuelo M. Callahan, Circuit Judges, and Morrison C. England,[*] District Judge.

---

[*] The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Certification to Washington Supreme Court

The panel certified to the Washington Supreme Court the following question:

> Whether an employer's compensation plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under Wash. Admin. Code § 296-126-021?

### COUNSEL

Todd L. Nunn and Patrick M. Madden, K&L Gates LLP, Seattle, Washington, for Defendants-Appellants.

Marc C. Cote and Toby J. Marshall, Terrell Marshall Daudt & Willie PLLC, Seattle, Washington; Jon W. MacLeod, MacLeod LLC, Seattle, Washington; Daniel F. Johnson, Breskin Johnson & Townsend PLLC, Seattle, Washington; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

This case arises from a dispute between Tiffany Hill ("Hill") and Xerox Business Services, LLC and its predecessor companies (collectively, "Xerox"), over the method by which Xerox calculated wages owed to Hill and others similarly situated. Hill brought a statewide class action lawsuit against Xerox for unpaid wages under the Washington Minimum Wage Act ("MWA"), Wash. Rev. Code § 49.46 *et seq.*, and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 *et seq*. This interlocutory appeal involves only Hill's claims under the MWA.

Under Washington law, when an employee is paid on a piecework basis, as opposed to an hourly basis, it is permissible for an employer to determine whether the employee's compensation complies with the MWA on the basis of a work-week period. *See* Wash. Admin. Code § 296-126-021; Dept. of Labor and Indus. Admin. Policy ES.A.3. In other words, as long as the total wages paid for a given week, divided by the total hours worked that week, averages to at least the applicable minimum wage, an employee's compensation complies with Washington law. On the other hand, if an employee is an hourly employee, he "retain[s] a per-hour right to minimum wage under Washington law," and weekly averaging is not permitted. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003); *see also* Wash. Rev. Code § 49.46.020.

The parties do not dispute the applicability of Washington's framework for determining whether an employer's compensation plan complies with Washington's minimum wage law. Rather, they dispute whether Hill was

an hourly employee or a piecework employee.[1]  Hill claims that she was an hourly employee and therefore Xerox violated the MWA by determining her hourly wage based on a work-week, as opposed to a per-hour, calculation.  Xerox, in contrast, contends that Hill was a piecework employee and therefore its work-week calculations were sanctioned by Washington Administration Code Section 296-126-021.  In the district court, Xerox moved for partial summary judgment on this issue, which the district court denied, stating that Xerox was not paying its employees on a piecework basis, and therefore summary judgment was inappropriate.  After denying a motion to reconsider, the district court certified Xerox's request for an immediate interlocutory appeal of its denial of partial summary judgment.  We granted Xerox's request, and this appeal followed.  We have jurisdiction pursuant to 28 U.S.C. § 1292(b).

This order certifies to the Washington Supreme Court the dispositive question of state law before us—namely, whether an employer's payment plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under Washington Administrative Code Section 296-126-021?[2]

---

[1] On appeal, Xerox contends that the district court erred in creating a false dichotomy by only considering two different pay systems of many available.  In our view, however, Xerox cannot seriously contend that its compensation plan was anything other than one of these two systems.

[2] Hill's Motion for Certification to the Washington Supreme Court is denied as moot.

# I.

Before addressing the certified question, we summarize the material facts.[3] Xerox operates call centers where they respond to calls for third-party clients such as phone companies, hotels, and airlines. Hill worked as an employee at the call center located in Federal Way, handling phone calls from Verizon Wireless customers. During Hill's entire tenure and until mid-2014, Xerox paid its call agents under the Achievement Based Compensation ("ABC") Plan. Under the ABC Plan, all employees' pay derived from three different sources: (1) ABC Pay, (2) Additional Pay, and (3) Subsidy Pay. As the system is somewhat complex, a description of the three sources follows.

First, Xerox primarily used ABC Pay to compensate its employees. ABC Pay was an incentive-based model rewarding agents who were efficient at dealing with customer issues. The ABC Plan required employees to track all of their time expended on certain activities—ranging from receiving calls to performing follow-up work. "Some of these activities—such as receiving inbound calls—[were] paid on a per minute basis, and each minute [was] referred to as a 'production minute.'" "Production minutes" were only generated when an agent was either on an incoming call, on hold during an incoming call, or completing after-call work related to the incoming call. The rate at which Xerox payed for "production minutes" was determined by both "qualitative and efficiency measures." The qualitative measure included two components: (1) supervisor evaluations of the employee, and (2) employee success in resolving the customer's issues. The efficiency measure was based on the employee's ability

---

[3] With respect to this appeal, there are no material facts in dispute.

to keep his average time spent on calls/call-related activities at or below a set number determined by Xerox. The rates at which employees were paid for their "production minutes" varied from fifteen cents per minute to twenty-five cents per minute. To determine an individual's ABC Pay for the week, Xerox took the total "production minutes" per week and multiplied it by the employee's per-minute rate. All other logged ABC time—i.e., non-"production minutes"—were not given a rate, but were tracked and appeared on an agent's pay statements.

Second, Xerox used Additional Pay to compensate its agents for some tasks that were not covered by ABC Pay. These defined activities included (1) training, (2) meeting/coaching, (3) work shortages, (4) system down time, (5) non-ABC Pay tasks or special projects, and (6) break pay. These activities were always paid at a standard hourly rate based on Washington's minimum wage for the applicable year.

Third, Xerox used Subsidy Pay to supplement an agent's wages if Xerox determined that the employee's hourly rate did not comply with minimum wage. To determine whether this supplement was necessary, Xerox took the Subsidy Pay rate (the minimum wage) and multiplied it by the total hours worked in a given week to calculate an employee's minimum pay. If that amount was greater than the result of adding an employee's ABC Pay to his Additional Pay, then the difference would be paid to the employee as Subsidy Pay in a lump-sum amount.

## II.

## A.

We turn to the issue that is the basis of our certification order. In Washington there are multiple ways to compensate employees. We discuss the two that are relevant to this dispute. First, employers can pay their employees under a piecework system. According to the Washington State Department of Labor and Industries, "[p]iece rate payment is usually a price paid per unit of work. For example, in a manufacturing plant, workers are paid 10 cents per widget they make on the production line."[4] *See also* Dept. of Labor and Indus. Admin. Policy ES.A.8.2 ("Piece rate employees are usually paid a fixed amount per unit of work."). Second, employers can pay their employees a set hourly rate for their work, otherwise known as an hourly wage.

As discussed *supra*, this distinction in how employees are paid is critical because employees who are paid hourly rates "retain a per-hour right to minimum wage under Washington law." *Alvarez*, 339 F.3d at 912. Piecework employees, on the other hand, are entitled to a minimum wage based on a work-week period.[5] Wash. Admin. Code § 296-126-021. As

---

[4] This definition appears on the Department of Labor and Industries' website, *available at* http://lni.wa.gov/WorkplaceRights/Wages/PayReq /CommBonus/default.asp (last visited July 28, 2017). Our research did not reveal a definition of "piece rate" within Washington's Revised Code or Washington's Administrative Code.

[5] According to Washington's Department of Labor and Industries Administrative Policy ES.A.3, "In order to determine whether an employee has been paid the statutory minimum hourly wage when the employee is compensated on other than an hourly basis, the following

the district court properly noted, the issue on summary judgment was "whether the Federal Way workers [were] hourly employees (as [Hill] contends) or pieceworkers (as [Xerox] contend[s])." If they were hourly employees, Hill's claim can move forward, whereas if they were pieceworkers, Hill's claim fails.

## B.

As the district court noted, and as observed by the parties in their appellate briefs, there is simply no caselaw on whether a compensation plan such as Xerox's qualifies as a piecework system. The parties agree that a piecework system generally compensates employees a set amount per unit of work—i.e., apples picked, tax returns completed, miles driven. The central question here, however, is whether "production minutes" can be classified as a unit of work. A brief discussion of both sides' arguments reveals that the issue is a close one, and one that we believe the Washington Supreme Court should decide in the first instance.

According to both Hill and the district court, Xerox's system of labeling minutes as "production minutes" is nothing but a strategy for circumventing the law. As the district court explained, "agents being paid for 'production minutes' are being paid on precise units of time." If a "minute" could be a unit of work, "every employer could pay

---

standards should be used: . . . For employees paid on commission or piecework basis, wholly or in part, . . . the commission or piecework earnings earned in each workweek are credited toward the total wage for the pay period. The total wage for that period is determined by dividing the total earnings by the total hours worked; the result must be at least the applicable minimum wage for each hour worked."

hourly workers a 'per-minute' rate and thereby avoid the Washington law governing workers paid on a per-hour rate."[6] There is certainly merit to this argument; defining a unit of production as a minute is clearly based on a measurement of time. And, the fact that potentially every employer could use such a system to possibly circumvent wage and hour laws, would be problematic for low-wage workers.

On the other hand, as Xerox points out, simply stating that the ABC Plan is not a piecework compensation system because it is novel in its application of units of time as production units is an overly simplistic analysis that ignores how the plan actually functions. To some extent, that characterization elevates the form of the production unit—time—over how it functions—as a compensable unit of production being sold. Xerox is paid by Verizon on the basis of "production minutes" that its employees spend in assisting Verizon customers. As a result, just like a fruit-seller trying to maximize the amount of fruit he has to sell by incentivizing his employees to pick more through a piecework system, Xerox sought to maximize the amount of minutes it could charge Verizon by incentivizing its agents to generate more "production minutes." Although it may seem odd for a unit of work to be simultaneously a measurement of time, this does not necessarily mean it cannot be so. In a

---

[6] Hill also argues that the ABC Plan cannot be a piecework plan because call center employees who work the same number of hours, and are paid the same per-minute rate, receive the exact same pay. Hill's contention is incorrect, as Xerox points out in its reply brief. It is not the total hours worked, but the total minutes spent on incoming calls, that determines an employee's pay. So, even though two employees may work the same number of total hours, one will earn more money if, during those hours, he spends more time than the other agent on incoming calls—just like a person who picks more strawberries.

sense, Xerox's compensation system responds to a modern problem—one in which the "goods" are not always tangible. Xerox cites to several documents demonstrating that "production minutes" are an accepted standard in the call center industry. These documents hardly establish an industry standard, but they do nominally support the idea that compensating employees on a per-minute basis arises out of the unique situation facing call centers.

## III.

Although the parties contentiously argue over an array of issues, the critical issue in this case is whether Xerox's compensation plan complies with Washington law. There is no controlling precedent on this issue and its resolution is necessary to resolve Xerox's appeal. Further, this issue potentially affects swaths of workers in the current Washington economy, and elsewhere, and is therefore a matter of important public policy. *See Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003) ("The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts."). In this case alone, there allegedly are approximately 10,000 low-wage workers affected. Accordingly, we believe that the Washington Supreme Court should decide the issue.

Because the controlling question of state law is not settled, we have concluded that the appropriate course of action is to certify this issue to the Washington Supreme Court and request that it provide the dispositive answer. If the Washington Supreme Court concludes that the ABC Plan is an hourly plan, we will affirm the district court on that

basis. If, however, the Washington Supreme Court determines that the ABC Plan is a piecework plan, we will vacate the district court's order denying partial summary judgment to Xerox.

## IV.

Because it is "necessary to ascertain the local law of this state in order to dispose" of this appeal, Wash. Rev. Code § 2.60.020, we respectfully certify to the Washington Supreme Court the following question: whether an employer's compensation plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under Wash. Admin. Code § 296-126-021?

We do not intend our framing of this question to restrict the Washington Supreme Court's consideration of any issues that it determines are relevant. If the Washington Supreme Court decides to consider the certified question, it may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

If the Washington Supreme Court accepts review of the certified question, we designate appellant Xerox as the party to file the first brief pursuant to Washington Rule of Appellate Procedure ("WRAP") 16.16(e)(1).

The clerk of our court is hereby ordered to transmit forthwith to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to Washington Revised Code Sections 2.60.010, 2.60.030 and WRAP 16.16. The record

contains all matters in the pending case deemed material for consideration of the local law question certified for answer.

Further proceedings in our court are stayed pending the Washington Supreme Court's decision whether it will accept review, and if so, receipt of the answer to the certified question. This case is withdrawn from submission and the clerk is directed to administratively close this docket, pending further order from this court. When the Washington Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing this court of the decision. If the Washington Supreme Court accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

**QUESTION CERTIFIED; SUBMISSION VACATED and PROCEEDINGS STAYED.**

_____
Sidney R. Thomas
Chief Judge
Ninth Circuit Court of Appeals