

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 2 0 2018

Fairhurst, C.J.

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Sept 20, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN<br><br>TIFFANY HILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiff-Appellee,<br><br>        v.<br><br>XEROX BUSINESS SERVICES, LLC; LIVEBRIDGE, INC., an Oregon Corporation; AFFILIATED COMPUTER SERVICES INC., a Delaware Corporation; AFFILIATED COMPUTER SERVICES LLC, a Delaware Limited Liability Company,<br><br>        Defendants-Appellants. | No. 94860-7<br><br>EN BANC<br><br>Filed  SEP 2 0 2018 |

GORDON McCLOUD, J.—In Washington, hourly workers are entitled to their contractual hourly rate of pay (or the legal minimum wage) for every hour worked. Piece rate workers, on the other hand, are entitled to their contractual piece rate (or the legal minimum wage), but that rate is not necessarily guaranteed for every hour individually worked: a higher production hour might subsidize a lower production hour. *See* WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN.

POLICY (DLI Admin. Policy) ES.A.3 (July 15, 2014). That means that the characterization of a compensation formula as either hourly or piece rate can have a dramatic effect on the amount of money that a Washington employer must pay its employees.

The dispute in this case concerns the correct characterization of Xerox's[1] payment plan under Washington law. Xerox has designed a compensation formula for its call center employees based on what Xerox calls a "production minute"—a unit of *time* (not a unit of tangible items, like bushels, or shirts, or pounds) during which a call center employee services incoming calls. Defs.-Appellants' Opening Br. at 4. If the "production minute" forms the basis for a bona fide piecework system, then one set of minimum wage rules and regulations apply. But if the "production minute" instead forms the basis for an hourly payment system, then another set of hourly and minimum wage protections apply. The characterization of that compensation formula either as hourly or piecework forms the basis for this wage dispute brought by call center employee Tiffany Hill against her employer Xerox, in federal court. Because the answer to this question depends on an

---

[1] We refer to defendants Xerox Business Services LLC, Livebridge Inc., Affiliated Services Inc., and Affiliated Computer Services LLC collectively as "Xerox" throughout this opinion.

underlying issue of Washington state law, the Ninth Circuit has certified the following question to this court:

> [W]hether an employer's payment plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under Washington Administrative Code [WAC] Section 296-126-021?

*Hill v. Xerox Bus. Servs., LLC*, 868 F.3d 758, 760 (9th Cir. 2017).

We accept the Ninth Circuit's question as presented, and we answer it no. An employer's payment plan that includes as a metric an employee's "production minutes" does not qualify as a piecework plan under WAC 296-126-021.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Xerox's ABC Compensation Plan

Xerox operates call centers nationwide that answer customer service calls on behalf of Xerox's third-party clients. Xerox uses different compensation formulas to pay its employees based in part on how it bills the clients served by each particular call center. The call center involved in this lawsuit is located in Federal Way. Xerox compensates Federal Way call center employees using its "Achievement Based Compensation" (ABC) plan.

The ABC plan provides compensation based on three variables: (1) the employee's unique ABC rate for the pay period, (2) the employee's "production minutes" during that pay period (explained in more detail below, but it basically

3

corresponds with the time the employee spends working on inbound customer calls),[2] and (3) the local minimum wage. When this case arose, the ABC rate ranged from $0.15 to $0.23 per production minute based on each employee's average customer satisfaction rating and average call handling time.[3] Using that rate range, employees could earn a maximum of $9.00 to $13.80 per hour depending on their particular ABC rate.

*B. The "Production Minute" Basis of Xerox's Compensation Plan*

To earn the maximum hourly rate, however, the employees would have to perform incoming-call-related work every minute they were at the call center. This is because the ABC rate applies only to "production minutes." Xerox defines this

---

[2] In the past, Xerox paid its employees based on the number of calls they resolved but switched to a per minute metric after receiving complaints from employees that the per call metric penalized them for taking difficult calls that took longer to resolve. Defs.-Appellants' Opening Br. at 3-4.

[3] Under the ABC plan, an employee's ABC rate fluctuated each pay period based on two metrics: average customer service rating and average call handling time:

| Average Customer Rating | AHT [Avg. Call Handling Time] 0-485 [seconds] | AHT 485+ [seconds] |
|---|---|---|
| [Tier A:] 100% | [$0.23 per min.] | [$0.19 per min.] |
| [Tier B:] 95% - 99.9% | [$0.22 per min.] | [$0.18 per min.] |
| [Tier C:] 90% - 94.9% | [$0.18 per min.] | [$0.17 per min.] |
| [Tier D:] 85% - 89.9% | [$0.16 per min.] | [$0.15 per min.] |
| [Tier E:] 0 - 84.9% | [$0.15 per min.] | [$0.15 per min.] |

Appellee's Answering Br. at 22.

4

critical concept as the time the employee is on the phone resolving an inbound customer call or performing certain postcall work.[4] Defs.-Appellants' Opening Br. at 4. "[P]roduction minutes [are] not generated by waiting for calls or making outbound calls." *Id.* at 25. Nor are "production minutes" generated by time spent reviewing workplace announcements, caring for workstations, logging on and off Xerox's phone systems, or recording time sheets and work activities, either. *Id.* at 16. And call center employees are not compensated separately for those non-incoming-call-resolution tasks, unless the employee's average hourly salary for the workweek falls below the applicable minimum wage. In such cases, the employee would be compensated separately for his or her nonproduction minutes by the amount necessary to raise that employee's average hourly salary for the workweek up to the minimum wage.[5]

---

[4] The parties dispute whether the ABC rate applied to postcall work. Appellee's Answering Br. at 6 n.4. Resolution of that dispute is not necessary to answer the certified question presented. The critical and undisputed fact is that the ABC plan measured production minutes based on actual clock time.

[5] Xerox paid a separate, hourly rate for specific, predefined activities, such as training, staff meetings, work shortages, system down time, and breaks. Compensation for time spent doing those activities is not in dispute.

## C. The Practical Effect of Characterizing "Production Minutes" as Hourly Wages or Piecework

During the time frame relevant to this case, the minimum wage for Federal Way employees was between $8.67 and $9.04 per hour. Defs.-Appellants' Opening Br. at 9-10 (citing Clerk's Papers (CP) at 552). But Federal Way employees did not necessarily receive that minimum wage for every hour worked. That is because Xerox applied workweek averaging—a concept applicable to piece rate work, but not to hourly work—to calculate minimum wage compliance. Under Xerox's workweek averaging, an employee's high producing hours are used to offset their low producing hours. Thus, unless the employee's *average* hourly salary for the workweek fell below the applicable minimum wage, the employee would not receive a minimum wage subsidy, even though the employee may have earned less than the minimum wage during certain hours of the week.

Washington's Minimum Wage Act (MWA), chapter 49.46 RCW, permits workweek averaging to determine minimum wage compliance for commission or piece rate workers.[6] But Washington's MWA does not permit such averaging for hourly workers. Instead, hourly workers must receive their contractual rate of pay

---

[6] Pursuant to the MWA, agricultural workers who are paid by the piece must also receive an hourly wage of at least minimum wage for work performed outside the scope of "piece-rate picking." *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 617, 416 P.3d 1205 (2018).

or minimum wage, whichever is higher, for each hour worked. WAC 296-126-021; *see also* DLI Admin. Policies ES.C.3 (Jan. 2, 2002), ES.A.3 (July 15, 2014).

*D. Proceedings in District Court*

The pivotal question here is whether Xerox employees under the ABC plan were piece rate workers. Hill, a former employee at Xerox's Federal Way call center, sued Xerox in federal district court. She claimed that Xerox failed to pay her (and a class of similarly situated employees and former employees) at least minimum wage for all time worked, in violation of the MWA. Hill argued that Xerox's ABC plan violated the MWA in two ways. Primarily, she argued that she was an hourly employee, that Xerox paid her for only some minutes worked (her production minutes) but not others, and that she is entitled to back pay for those unpaid, nonproduction minutes. Appellee's Answering Br. at 19-24. Alternatively, Hill argued that even if Xerox correctly classified her as a piece rate worker, Xerox still owes her back pay for her nonproduction minutes. *Id.* at 27. She contended that she is entitled to such back pay, even as a piece rate worker, based on *Lopez Demetrio v. Sakuma Brothers Farms*, 183 Wn.2d 649, 355 P.3d 258 (2015). She argues that *Lopez Demetrio* requires employers to pay piece rate workers separately for their nonproduction time. Appellee's Answering Br. at 28 (quoting *Lopez Demetrio*, 183

7

Wn.2d at 652). She sought class certification and back wages based on both theories. CP at 768-83.

Xerox acknowledges that it must pay its call center employees for all time worked and that such payment must comply with the prevailing minimum wage. Xerox argues that its ABC plan fully compensated Hill and the class "for all time they worked." Defs.-Appellants' Opening Br. at 12. Xerox explains that the fact that it measured compensation for all time worked based on the minutes spent resolving inbound customer calls does not mean that it failed to pay its call center workers for their other work—specifically, for their other, non-inbound-call work. Xerox relied on contractual provisions explaining that compensation for all time spent working would be measured by just a portion of the time spent working—the employee's production minutes. *Id.* at 15-17.

Xerox moved for partial summary judgment in federal district court on multiple issues related to minimum wage and overtime compliance under the MWA. The district court ruled that the resolution of all of those issues depended on "whether the Federal Way workers are hourly employees (as Plaintiff [Hill] contends) or pieceworkers (as Defendants contend)." CP at 134. The district court resolved that foundational issue in Hill's favor and denied Xerox's motion. That court explained that "the Federal Way employees [were] hourly workers" and

therefore were entitled to a per hour minimum wage. *Id.* The district court recognized that classifying Xerox employees as hourly employees probably oversimplified the mechanics of the ABC plan. *Id.* at 135. But it was concerned that "were this Court to accept Defendants' description, every employer could pay hourly workers a 'per-minute' rate and thereby avoid the Washington law governing workers paid on a per-hour rate." *Id.* The district court was most concerned with Xerox's use of actual clock time rather than estimated times, explaining that "[a] system equating certain tasks to *pre-established* units of time [regardless of how much time the tasks actually took] is very different than one that measures the *precise* amount of time a task takes. The former may resemble a piece[]rate system, but the latter more closely resembles an hourly system." *Id.* at 136 (emphasis added). It therefore denied Xerox's motion for partial summary judgment.

The district court, however, recognized the novelty of Xerox's compensation scheme and the decisive effect its decision had on the remaining portions of the parties' wage dispute. It therefore certified its decision to the Ninth Circuit Court of Appeals for immediate, interlocutory review. *Id.* at 129.

*E. Proceedings in the Ninth Circuit*

The Ninth Circuit accepted review, determined that resolution of the case involved consideration of an open question of Washington state law, and certified the following state law question to this court:

> [W]hether an employer's payment plan, which includes as a metric an employee's "production minutes," qualifies as a piecework plan under [WAC §] 296-126-021?

*Hill*, 868 F.3d at 760. We accepted review. RAP 16.16; ch. 2.60 RCW.

## II. ANALYSIS

*A. We Decline the Parties' Invitation To Revise the Certified Question*

As a threshold matter, both Xerox and Hill ask us to reformulate the certified question. Each complains that the question does not fully resolve their dispute.

Xerox describes the parties' underlying dispute as really one of hourly versus nonhourly pay, regardless of what type of nonhourly compensation (commission, salary, nondiscretionary bonus, piecework, or some other alternative pay structure) the ABC plan implicates.[7] Defs.-Appellants' Opening Br. at 45. Thus, the certified

---

[7] The district court suggested, in a different case, that Xerox's ABC plan might qualify as a commission-based schedule. *Douglas v. Xerox Bus. Servs., LLC*, No. C12-1798-JCC, 2015 WL 10791972, at *4 n.3 (W.D. Wash. Dec. 1, 2015) (court order). But the Ninth Circuit rejected Xerox's claim in this case that the ABC plan could be classified as anything other than piece rate or hourly pay. *Hill*, 868 F.3d at 760 n.1 (concluding that "Xerox cannot seriously contend that its compensation plan was anything other than one of these two systems": piece rate or hourly).

question, which asks only whether the ABC plan constitutes a piecework plan, does not resolve Xerox's broader argument that the ABC plan qualifies as some other nonhourly, nonpiecework plan, such as commission pay. Xerox asks that we reform the certified question and instead answer "'whether an employer's payment plan that pays based on production, but that includes as a unit of work an employee's "production minutes," qualifies as an hourly compensation plan?'" *Id.* at 7.

Hill also seeks revision of the certified question, but she asks that we reframe the issue in a different way. Appellee's Answering Br. at 14. She describes the issue in this case, in part, as whether Xerox failed to pay its employees for their nonproduction minutes. *See id.* at 1-2.

The Ninth Circuit acknowledges that neither party is satisfied with its certified question and leaves the decision whether to reformulate that question to this court.[8] We decline to do so. The parties have a broader dispute that they have more fully briefed and argued in the Ninth Circuit. Whether "production minutes" constitute piece rate work is just part of that larger case. But it is the foundation on which the other arguments must stand. We therefore accept the Ninth Circuit's request for guidance on only the narrow question presented: whether Xerox's ABC plan, "which

---

[8] *Hill*, 868 F.3d at 763 (citing *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999) (acknowledging that this court may in its discretion reformulate certified questions when necessary to answer them)).

11

includes as a metric an employee's 'production minutes,' qualifies as a piecework plan under [WAC §] 296-126-021?" *Hill*, 868 F.3d at 760.

We answer that narrow, certified question in the negative and leave resolution of the parties' broader wage dispute for the federal district court, in which the dispute is filed.

### B. *Xerox's ABC Plan Does Not Qualify as a Piecework Plan under WAC 296-126-021*

Washington has a "'long and proud history of being a pioneer in the protection of employee rights.'" *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002) (quoting *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582 (2000)). In 1913, Washington was one of the first states to enact a statewide minimum wage for women and minors. LAWS OF 1913, ch. 174, § 2. In 1959, those minimum wage protections were expanded to include men. LAWS OF 1959, ch. 294, §§ 1-2. That expanded version became known as the Washington MWA.[9] LAWS OF 1961, Ex. Sess. ch. 18, § 6.

The legislature enacted these minimum wage laws to protect the health, safety, and general welfare of its citizenry by ensuring that minimal employment standards were met. RCW 49.46.005(1); LAWS OF 1913, ch. 174, § 1. Under those laws,

---

[9] The act was briefly known as the Washington Minimum Wage and Hour Act, until its name change in 1961. LAWS OF 1959, ch. 294, § 14.

Washington employers and employees generally remain free to negotiate the terms of their employment relationship. But "an employer *must* pay an employee at least the minimum wage for work" performed. *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 838, 991 P.2d 1126 (2000) (*SPEEA*) (emphasis added).

Thus, in *SPEEA*, this court ruled that an employment contract requiring an employee to attend preemployment orientation sessions without pay is unenforceable: it violates the rule that the employer must pay the employee at least the minimum wage for work performed. *Id.* Similarly, in *Stevens v. Brink's Home Security, Inc.*, this court ruled that a contract denying employees compensation for work time spent "on duty," driving company vehicles between their homes and company jobsites, was unenforceable. 162 Wn.2d 42, 49, 169 P.3d 473 (2007). This court explained, once again, that the MWA gives an employee the right to compensation for all time worked.

To be sure, the regulations implementing the MWA make an exception to this right to earn the minimum wage for every hour worked: they permit workweek averaging for employees who are "paid on a commission or piecework basis, wholly or partially." WAC 296-126-021. The certified question before us is whether Xerox's ABC plan qualifies as piece rate compensation subject to workweek averaging pursuant to that regulation. *Id.* We hold that it does not.

WAC 296-126-021 authorizes employers to pay employees on a piecework basis and establishes a formula for calculating minimum wage compliance for such pay. (That formula includes workweek averaging.) But the regulation does not define what compensation schemes fit within the meaning of piecework pay. The Department of Labor and Industries (the agency tasked by the legislature with enforcing the MWA and its implementing regulations) has not defined the scope of piecework compensation either. That agency describes "[p]iece rate employees" only as "usually paid a fixed amount per unit of work." DLI Admin. Policy ES.A.8.2 (July 15, 2014).[10] It does not say whether time—specifically, minutes—constitutes a "unit of work."

Xerox argues that its ABC plan fits within the agency description of piece rate because the plan compensates call center workers a "fixed amount" (their per minute ABC rate) on a "per unit of work" measurement—and it describes the unit as the "production minute." Hill disagrees with that classification. She argues that if employers were allowed to use an employee's clock time as a "unit of work," then employers could circumvent the MWA's bar against workweek averaging simply by classifying their employees' otherwise hourly salaries as piece rate units.

---

[10] Consistent with that general description, we recently described "piece rate" as "tied to the employee's output (for example, per pound of fruit harvested) and is earned only when the employee is actively producing." *Lopez Demetrio*, 183 Wn.2d at 652.

We agree with Hill. The MWA does not permit employers to use clock time as a "unit of work" for piece rate pay. A contrary rule would allow WAC 296-126-021's limited exception for workweek averaging to swallow up the general rule barring workweek averaging for hourly employees. Under Xerox's interpretation, employers would be able to pay their workers less than minimum wage for each hour worked—something they are not allowed to do under the hourly system—simply by classifying portions of the employees' work time as piece rate units.

This proposed interpretation of WAC 296-126-021 is inconsistent with our duty to liberally construe the provisions of the MWA, including its corresponding regulations, in favor of workers' protections and their right to be paid a minimum wage for each hour worked. *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 195, 332 P.3d 415 (2014) (citing *Int'l Ass'n of Fire Fighters*, 146 Wn.2d at 45); RCW 49.46.005. Indeed, our precedent requires this court to make sure that the MWA "'"'be liberally construed [in favor of the employee] and that its exceptions be narrowly confined.'"'" *Int'l Ass'n of Fire Fighters*, 146 Wn.2d at 34 (alteration in original) (quoting *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps.*, 130 Wn.2d 401, 407, 924 P.2d 13 (1996) (interpreting a collective bargaining statute) (quoting *Nucleonics All., Local Union No. 1-369 v. Wash. Pub. Power Supply Sys.*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984))).

We therefore answer no to the certified question. We answer no more than that. We understand that compensation plans in other industries are sometimes based on estimated times, as opposed to actual clock times.[11] Our decision today does not address the characterization of those plans. We also understand that the parties dispute whether the ABC plan qualifies as some other measure of nonhourly pay that could qualify for workweek averaging. That question is not before us either. Our holding is limited to answering the certified question.

## CONCLUSION

We answer the certified question from the Ninth Circuit in the negative. We hold that actual clock hours cannot be used as a piece rate measure under WAC 296-126-021.

---

[11] For example, automotive repair shops sometimes pay their mechanics predefined hours (known as "flag hours") for each particular repair job, regardless of how long it actually takes the mechanic to complete the job. *Sandoval v. M1 Auto Collisions Ctrs.*, No. 13-CV-03230-EDL, 2016 WL 6561580, at *2 (N.D. Cal. Sept. 23, 2016) (court order) (mechanics); *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 41, 155 Cal. Rptr. 3d 18 (2013) (mechanics); *see also Green v. Lawrence Serv. Co.*, No. LA CV 12-06155 JAK (VBKx), 2013 WL 3907506 (C.D. Cal. July 23, 2013) (court order) (wages based on estimated time it takes to set up retail displays for mobile vendors); *Gen. Teamsters Local No. 174 ex rel. Gasca v. Safeway, Inc.*, noted at 156 Wn. App. 1003, 2010 WL 1981821, at *2 (driver wages based on estimated trip time).

No. 94860-7

_____
George McCloud, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____

_____
Madsen, J.

_____
Wiggins, J.

_____
González, J.

_____
Yu, J.

*Hill v. Xerox Business Services, LLC, et al.*
(Stephens, J., dissenting)

No. 94860-7

STEPHENS, J. (dissenting)—Starting from the flawed premise that "production minutes" are "actual clock hours," the majority invalidates Xerox's achievement based compensation (ABC) plan as essentially a cleverly disguised hourly compensation scheme. Majority at 15-16. This is contrary to the way the plan actually functions. While using increments of time as part of a performance metric, the ABC plan is a pure piece-rate plan that compensates employees based on units of work, not by the minute or hour. I would answer the certified question, yes, an employer's compensation plan, which includes as a metric an employee's "production minutes," may qualify as a piecework plan under WAC 296-126-021. I respectfully dissent.

ANALYSIS

Washington's Minimum Wage Act (MWA), ch. 49.46 RCW, recognizes that employers may compensate their employees in a variety of ways. It expresses no preference for any particular method of compensation. Relevant here, employers

can pay their employees a piece rate for units of work, irrespective of time. "Piece rate employees are usually paid a fixed amount per unit of work"—for example, $0.75 per apple picked, $0.10 per widget produced, or $5.00 per mile driven. WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2 (revised July 15, 2014), http://www.lni.wa.gov/WorkplaceRights/files/policies/esa82.pdf [https://perma.cc/J4RE-S78Y]. Alternatively, employers can pay their employees an hourly rate for each hour worked, irrespective of productivity. The distinction between these two methods of compensation forms the backdrop to the certified question because how employees are paid determines the applicable minimum wage rules and regulations. *Hill v. Xerox Bus. Servs., LLC*, 868 F.3d 758, 761 (9th Cir. 2017).

Minimum wage compliance under Washington law is determined differently for piece-rate employees than for hourly employees. When an employee is paid on a piecework basis, as opposed to an hourly basis, employers may use workweek averaging to determine whether the employee's overall compensation complies with the MWA. *See* WAC 296-126-021; WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.3 (revised July 15, 2014), http://www.lni.wa.gov/Workplace Rights/files/policies/esa3.pdf [https://perma.cc/7XWG-6FE8]. "In other words, as long as the total wages paid for a given week, divided by the total hours worked that week, averages to at least the applicable minimum wage," the piece-rate employee's

compensation complies with Washington law. *Hill*, 868 F.3d at 759. In contrast, when an employee is paid on an hourly basis, the hourly employee "'retain[s] a per-hour right to minimum wage under Washington law,'" and workweek averaging is not permitted. *Id.* (alteration in original) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003), *aff'd*, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)).

Given the differences between piecework compensation and hourly compensation, the correct characterization of Xerox's ABC plan is critical to determining whether the plan complies with Washington law. As the majority explains, the distinction is particularly important in this case because "[i]f the 'production minute' forms the basis for a bona fide piecework system, then one set of minimum wage rules and regulations apply. But if the 'production minute' instead forms the basis for an hourly payment system, then another set of hourly and minimum wage protections apply." Majority at 2.[1]

---

[1] While the majority initially recognizes that "Washington's [MWA] permits workweek averaging to determine minimum wage compliance for commission or piece rate workers," majority at 6, it later casts workweek averaging under WAC 296-126-021 as a "limited exception" to "the general rule barring workweek averaging for hourly employees." *Id.* at 14. This description is confusing at best. WAC 296-126-021 is not a "limited exception" to an employee's right to earn the minimum wage for every hour worked. *See id.* at 13. All employees have that right. Workweek averaging is simply a permitted method for ensuring that commission or piece-rate employees receive at least the minimum wage for all hours worked. The majority's "limited exception" versus "general rule" language seems to suggest that hourly pay is Washington's preferred method of compensation, but the MWA expresses no such preference. As noted, Washington law affords employers the flexibility to choose among various compensation models, so long

-3-

I would hold that the time-based units used in Xerox's ABC plan—"production minutes"—qualify as piecework units because they are functionally a metric of *production*, not a measurement of time, as they are "tied to the employee's output." *Lopez Demetrio v. Sakuma Bros. Farms*, 183 Wn.2d 649, 652, 355 P.3d 258 (2015).

### A "Production Minute" May Qualify as a "Unit of Work" under Washington Law

The certified question requires us to determine what exactly is "a piecework plan under [WAC] 296-126-021." *Hill*, 868 F.3d at 763. Neither WAC 296-126-021 nor the statutory text of the MWA explicitly defines the term "piecework." WAC 296-126-021 establishes that employees "paid on a commission or piecework basis, wholly or partially," are entitled to a minimum wage based on a workweek period. This simply means that a piecework employee's compensation complies with Washington law so long as the total wages paid in a workweek divided by the total hours worked that week averages to at least the applicable minimum wage. The MWA and its corresponding regulations also authorize employers to measure minimum wage compliance on a piecework basis, without expressly defining the term "piecework." RCW 49.46.020; WAC 296-126-020(1) ("Every employer shall

---

as employees receive at least the applicable minimum wage and are paid for all hours worked.

pay to each of his or her employees . . . a rate of pay per hour which is equal to the hourly rate required by RCW 49.46.020 . . . , whether computed on an hourly, commission, *piecework*, or other basis." (emphasis added)).

In the absence of definitional clarity from the legislature, we look to the Department of Labor and Industries (DLI) and our case law for further guidance. According to DLI, "[p]iece rate employees" are "usually paid a fixed amount per unit of work." WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2. "For example, in a manufacturing plant, workers are paid 10 cents per widget they make on the production line."[2] In *Lopez Demetrio*, we described piece-rate pay in a similar way: "A piece rate is tied to the employee's output (for example, per pound of fruit harvested) and is earned only when the employee is actively producing." 183 Wn.2d at 652. A working definition of the term "piecework" emerges from this guidance. Under a piecework plan, employees are paid a fixed

---

[2] This definition appears on the DLI website, as cited by the Ninth Circuit, and states in its entirety:

> Piece rate payment is usually a price paid per unit of work. For example, in a manufacturing plant, workers are paid 10 cents per widget they make on the production line. The worker is entitled to minimum wage, however. So if the pay per piece does not equal minimum wage for the time it took to create those pieces, the business must make up the difference so the worker gets at least minimum wage for the time worked.

WASH. ST. DEP'T OF LAB. & INDUSTRY, Commissions, Piece Rate & Bonuses, https://www.lni.wa.gov/WorkplaceRights/Wages/PayReq/CommBonus/default.asp [https://perma.cc/6CQB-BN8U].

-5-

rate for each "unit of work" produced (not a set hourly rate for each hour worked). WASH. DEP'T OF LABOR & INDUS., EMP'T STDS. ADMIN. POLICY ES.A.8.2. And, the "unit of work," or "piece," must be "tied to the employee's output" and production. *Lopez Demetrio*, 183 Wn.2d at 652. In other words, a "unit of work" must be some metric of production, not merely a measurement of time.

Applying this definition to the certified question, the primary issue in this case is whether "production minutes" under Xerox's ABC plan qualify as "units of work" when they are "tied to the employee's output." *See Hill*, 868 F.3d at 762 ("The central question here, however, is whether 'production minutes' can be classified as a unit of work.").

*Xerox's ABC Plan Is an Incentive-Based Model That Uses "Production Minutes" as Part of the Metric for Measuring Employee Performance*

The ABC plan primarily compensates employees for their productivity. It uses a three-part metric for measuring productivity, based on "rep resolve" (customer satisfaction as reported in surveys), "average handle time" (AHT) for calls, and "production minutes."[3] Clerk's Papers (CP) at 491. "Production minutes" are generated while an employee is on an incoming call, on hold during an incoming

---

[3] Xerox pays employees on a separate, hourly basis for specific, non-call-related activities, such as training, staff meetings, work shortages, system down time, and breaks. Employees may also receive separate bonuses for meeting predefined achievement goals, or based on special client-sponsored incentive programs. Compensation outside of the ABC plan is not in dispute.

call, or completing after-call work related to the incoming call. *Hill*, 868 F.3d at 760. The ABC plan structures employee compensation around "production minutes" because that is how Xerox sells its product to its client, Verizon—by the "production minute." As specified in the Verizon contract, Verizon pays Xerox based on the number of "production minutes" the Federal Way call center generates. CP at 488.[4]

In order to calculate an employee's pay, the ABC plan first determines a compensation rate based on "rep resolve" and "AHT." *Id.* at 491. It then multiplies the employee's rate of pay by the total number of "production minutes" the employee logs each week to determine the employee's weekly ABC pay. While focusing on employee productivity, the ABC plan guarantees that employees will be paid at least the minimum wage for all hours worked, regardless of production. To ensure that every employee receives at least the legal minimum wage for all time worked, Xerox calculates each employee's hourly rate by dividing the employee's weekly production-based pay by the total number of hours worked that week. If that hourly rate falls below the applicable minimum wage rate, Xerox pays the difference to the employee as "subsidy pay" in a lump-sum amount, which is added to the employee's weekly paycheck. *Hill*, 868 F.3d at 761. In this regard, it is not possible for an

---

[4] Notably, this contract limits "production minutes" to 507 average seconds per call received. CP at 488.

employee to be paid less than minimum wage for all recorded hours worked, even if the employee never answers a single call. If an employee reports to work on Monday and leaves work on Friday without generating any "production minutes" that week, the employee will still be paid at the applicable minimum wage rate for every recorded hour worked.

To properly understand how the ABC plan functions, it is important to appreciate that it was created as "an incentive-based model rewarding agents who were efficient at dealing with customer issues." *Id.* at 760.[5] Prior to 2009, Xerox paid employees a fixed rate for every incoming *call* the employee handled. Defs.-Appellants' Opening Br. at 3; CP at 543-44. Unsurprisingly, Xerox used each *call* as the production unit in order to incentivize employees to handle more calls. At the end of each workweek, Xerox tracked the number of incoming calls the employee received and multiplied that number by certain production rates to determine the employee's weekly ABC pay. CP at 543-44. If an employee did not handle enough calls for the weekly ABC pay to reach the legal minimum wage rate, Xerox paid the

---

[5] The majority prefers not to recognize the ABC plan as an incentive-based model but as one under which "an employee's high producing hours are used to offset their low producing hours." Majority at 6. The suggestion is that because Xerox uses workweek averaging, "Federal Way employees did not necessarily receive that minimum wage for every hour worked." *Id.* The majority's characterization unnecessarily casts a cloud over the use of workweek averaging to calculate piece-rate pay—a practice that is not in question in this case and is specifically authorized under WAC 296-126-021. *See Hill*, 868 F.3d at 762-63.

difference so the employee was always paid at least the minimum wage on a weekly basis. As under the current plan, this call-based ABC plan focused on employee productivity and paid employees per unit of production.

The ABC plan was eventually modified to use "production minutes" rather than calls as the measure of productivity. Xerox made this change in part to address employee concerns about the unfairness of paying the same amount for all incoming calls, regardless of duration. *Id.* Under the call-based ABC plan, employees earned the same amount for any call they received, whether the call lasted for 30 minutes or 30 seconds. Defs.-Appellants' Opening Br. at 23. The ABC plan was also modified because Xerox's contract with Verizon changed to provide that Xerox would be compensated for the number of "production minutes" generated by the Federal Way call center. As noted, Verizon currently purchases minutes of specific call-related activities—"production minutes"—from Xerox. CP at 543-44. Although the ABC plan switched to a different unit of measurement—"production minutes" rather than calls—everything else about the plan remained the same, and the focus remained on incentivizing productivity. Thus, "just like a fruit-seller trying to maximize the amount of fruit he has to sell by incentivizing his employees to pick more through a piecework system, Xerox sought to maximize the amount of minutes

it could charge . . . by incentivizing its agents to generate more 'production minutes.'" *Hill*, 868 F.3d at 762.

Although described in terms of time segments, "production minutes" function as units of work. Like the apple farmer who produces and sells apples, Xerox produces and sells units of customer service—"production minutes"—which its employees generate while assisting Verizon customers. It may seem unusual for an employer to use time-based units as a basis for piece-rate pay, but the MWA does not prohibit it. Nothing in Washington law requires that a unit of work in a piecework plan be a *tangible* item, like a shirt or a piece of fruit. To the contrary, employers often compensate pieceworkers for intangible work activities or based on qualitative metrics, such as miles driven, pounds of fruit harvested, or calls taken. No one refutes that the prior version of the ABC plan, which used individual calls rather than "production minutes," qualified as a piecework plan under WAC 296-126-021. Rather than focusing on the label "minutes," we should consider that Xerox's ABC plan simply "responds to a modern problem—one in which the 'goods' are not always tangible." *Id.* So long as the "piece" is "tied to the employee's output," I see no reason why a unit of work may not simultaneously be a measurement of time and a measurement of production. While the ABC plan may seem novel in its choice of production unit, there is nothing unusual about how the

production unit actually functions—each "production minute" is a compensable unit of work that Xerox sells.

The majority cannot get past the fact that minutes are segments of time. Indeed, it characterizes "production minutes" as comprising "actual clock hours." Majority at 16. Thus, it concludes that "[t]he MWA does not permit employers to use clock time as a 'unit of work' for piece rate pay." *Id.* at 14. The majority fears that "[a] contrary rule would allow the WAC 296-126-021's limited exception for workweek averaging to swallow up the general rule barring workweek averaging for hourly employees." *Id.* In the majority's view, "if employers were allowed to use an employee's clock time as a 'unit of work,' then employers could circumvent the MWA's bar against workweek averaging [for hourly employees] simply by classifying their employees' otherwise hourly salaries as piece rate units." *Id.* I believe the majority's characterization of the ABC plan disregards how the plan actually functions. As the certification order recognizes, "production minutes" are not clock time; "even though two employees may work the same number of total hours, one will earn more money if, during those hours, he spends more time than the other agent on incoming calls—just like a person who picks more strawberries." *Hill*, 868 F.3d at 762 n.6.

Because Xerox employees are paid for their production units rather than for their time, the majority's reliance on *Seattle Professional Engineering Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 991 P.2d 1126 (2000) (*SPEEA*) and *Stevens v. Brink's Home Security, Inc.*, 162 Wn.2d 42, 169 P.3d 473 (2007) is misplaced. Majority at 12-13. *SPEEA* and *Stevens* involve hourly workers who were contractually required to perform certain work activities without any pay. The employees in *SPEEA* were required to attend unpaid orientation sessions, while those in *Stevens* were not compensated for certain travel time on the job. Here, there are no unpaid workers or unpaid time, just a "somewhat complex" compensation method. *Hill*, 868 F.3d at 760.

I disagree with the majority's assumption that employers will use time-based production units as a strategy for circumventing minimum wage laws. Under a piecework plan, employers must pay their employees a set amount for each "unit of work" produced. And, the "unit of work" must be "tied to the employee's output." *Lopez Demetrio*, 183 Wn.2d at 652. Employers may not arbitrarily pay hourly workers a "per minute" rate in an effort to transform hourly pay into piece-rate pay. To qualify as a piecework plan, compensation measured by work minutes must be tied directly to some productivity metric, such as the "production minutes" at issue in this case. Here, Xerox markets and sells a specific product to Verizon—a

-12-

"production minute." Verizon in turn pays Xerox for the number of "production minutes" Xerox generates. Federal Way employees produce each "production minute" that is eventually sold to Verizon. The entire business model involves the same unit of production: Xerox sells "production minutes," the Federal Way employees produce "production minutes," and Verizon purchases "production minutes." Recognizing the ABC plan as a piecework plan will not open the door to abusive practices. Employers cannot "simply . . . classify[] portions of the employees' work time as piece rate units," as the majority assumes. Majority at 15. There must be, as here, an actual unit of production.

## CONCLUSION

Xerox's ABC plan compensates employees based on their production, not their clock time at work. Under WAC 296-126-021, this compensation plan, which includes as a metric an employee's "production minutes," may qualify as a piecework plan when the "production minutes" function as a metric of production tied to the employee's output. I would answer yes to the certified question.